Francis J. KELLY, Appellant,

v.

DREXEL UNIVERSITY.

No. 95–2046.

United States Court of Appeals,
Third Circuit.

Submitted under Third Circuit
LAR 34.1(a) Aug. 12, 1996.

Decided Aug. 23, 1996.

Sur Petition for Rehearing Sept. 20, 1996.

Kathryn H. Levering, Susan M. Roche, Michael D. Homans, Drinker, Biddle & Reath, Philadelphia, PA, for Appellee.

Before: GREENBERG and ALITO, Circuit Judges, and FISHER, District Judge.*

## OPINION OF THE COURT

GREENBERG, Circuit Judge.

### I. INTRODUCTION

Appellant Francis J. Kelly appeals from an order for summary judgment entered in this action which he brought against his former employer, Drexel University, alleging that Drexel terminated his employment and subsequently failed to rehire him in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–34, the American with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–13, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons.Stat. Ann. §§ 951–63 (1991). In addition, Kelly alleges that Drexel discriminated against him with respect to his compensation, terms, conditions, and privileges of employment on the basis of his age.

The district court entered summary judgment in Drexel's favor. *Kelly v. Drexel Univ.*, 907 F.Supp. 864 (E.D.Pa.1995). The court held, first, that Kelly was not disabled for the purposes of the ADA and thus was not entitled to protection under that Act. The court went on to hold in the alternative that even if Kelly were legally disabled, he failed to produce sufficient evidence that Drexel had discriminated against him on the basis of his impairment. Further, the court held that Drexel did not discriminate against Kelly due to his age either. The court also rejected Kelly's claims with respect to rehiring and compensation, terms, conditions, and privileges of employment. Kelly then appealed.

In view of the procedural posture of the case, we recite the facts in a light most favorable to Kelly. Drexel hired Kelly, who was then 56 years old, in April 1981, as a buyer in its purchasing department. In Sep-

Mary Ann Hagan, Philadelphia, PA, for Appellant.

* Honorable Clarkson S. Fisher, Senior Judge of the United States

tember 1987, Kelly fractured his hip, leaving him with a noticeable limp. His orthopaedic specialist diagnosed his condition as severe post-traumatic degenerative joint disease of the right hip and protrusio acetabulum of the right hip joint. In January 1993, Drexel eliminated Kelly's position. At the time Drexel discharged Kelly, the purchasing department consisted of the director, James Graham, a buyer assistant, and three buyers, each with distinct areas of responsibility. Kelly, who then was 68 years old, was the senior buyer, and supervised general purchases for the university. Thomas Tucker (age 54) was the scientific buyer and handled purchases for the science departments. John Dick (age 46) was the physical plant buyer and was responsible for the university's physical plant department.

In 1993, Drexel was experiencing financial difficulties and as a part of a university-wide effort to cut spending, Freddie Gallot, Drexel's vice president and treasurer, instructed Graham to reduce the purchasing department's budget by $30,000. Graham determined that he could attain the required savings by eliminating Kelly's position, which paid $32,340, and assigning Kelly's responsibilities to Tucker and himself. On January 26, 1993, Drexel notified Kelly that his position was to be eliminated effective January 31, 1993.

On July 1, 1993, Kelly filed a charge of disability and age discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and a similar complaint with the Pennsylvania Human Relations Commission. After the EEOC issued a right to sue letter, Kelly brought suit on August 29, 1994, in the district court. On June 23, 1995, Drexel moved for summary judgment. On November 9, 1995, the district court, pursuant to its memorandum opinion of November 7, 1995, entered an order granting Drexel's motion and on December 7, 1995, the court entered an order denying Kelly's motion for reconsideration. Kelly filed a notice of appeal on December 6, 1995, and an amended notice of appeal on December 19, 1995.

As we have indicated, the court found that Kelly was not disabled and that Drexel did not discriminate against him when it discharged him. Kelly challenges these determinations on this appeal. As we also have indicated, the district court rejected Kelly's claims that Drexel discriminated against him with respect to rehiring and with respect to compensation, terms, conditions, and privileges of employment, *Kelly*, 907 F.Supp. at 878, but Kelly does not challenge these determinations on this appeal.

The district court had federal question jurisdiction over Kelly's ADEA and ADA claims pursuant to 28 U.S.C. § 1331, and exercised supplemental jurisdiction over Kelly's state claims under 28 U.S.C. § 1367. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291 and exercise plenary review.

## II. DISCUSSION

The ADA prohibits employers from discriminating against qualified individuals with disabilities because of their disabilities in certain employment-related matters. 42 U.S.C. § 12112(a).[1] The ADEA prohibits age discrimination in employment decisions against persons who are at least 40 years of age. 29 U.S.C. § 623(a)(1).[2] The PHRA prohibits an employer, *inter alia*, from refusing to hire, discharging, or otherwise discriminating against an employee on the basis of age or non-job related handicap or disability. 43 Pa. Cons.Stat. Ann. § 955(a).[3]

---

1. The ADA provides in relevant part:
   No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.
   42 U.S.C. § 12112(a).

2. The ADEA provides in relevant part:

It shall be unlawful for an employer . . .
   to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age. . . .
29 U.S.C. § 623(a)(1).

3. The PHRA reads in relevant part:

It shall be an unlawful discriminatory practice,
   . . . (a) For any employer because of the race,

■ While the Pennsylvania courts are not bound in their interpretations of Pennsylvania law by federal interpretations of parallel provisions in Title VII, the ADA, or the ADEA, *Harrisburg Sch. Dist. v. Pennsylvania Human Relations Comm'n,* 77 Pa. Cmwlth. 594, 466 A.2d 760, 763 (1983), its courts nevertheless generally interpret the PHRA in accord with its federal counterparts; *see Gomez v. Allegheny Health Servs., Inc.,* 71 F.3d 1079, 1083–84 (3d Cir.1995) (noting that PHRA and Title VII are interpreted similarly), *cert. denied,* —— U.S. ——, 116 S.Ct. 2524, 135 L.Ed.2d 1049 (1996); *Chmill v. City of Pittsburgh,* 488 Pa. 470, 412 A.2d 860, 871 (1980) (recognizing precedents suggesting that "the Human Relations Act should be construed in light of 'principles of fair employment law which have emerged relative to the federal [statute] ....'") (quoting *General Elec. Corp. v. PHRC,* 469 Pa. 292, 365 A.2d 649, 654 (1976)). Moreover, the PHRA definition of "handicap or disability" is substantially similar to the definition of "disability" under the ADA. *Fehr v. McLean Packaging Corp.,* 860 F.Supp. 198, 200 (E.D.Pa.1994). Consequently, the district court properly treated Kelly's PHRA claims as coextensive with his ADA and ADEA claims, and Kelly does not dispute this treatment on appeal.

■ As we have indicated, in granting summary judgment the district court held that Kelly failed to establish a prima facie case of disability discrimination because the court found that he was not disabled for the purposes of the ADA. *Kelly,* 907 F.Supp. at 873–74. We first address this holding. A plaintiff has a "disability" for the purposes of the ADA if he (1) has "a physical or mental impairment that substantially limits one or more of the major life activities of such individual"; (2) has "a record of such an impairment"; or (3) is "regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(g). Kelly does not claim that he was fired based on a record of disability, so we focus on the first and third definitions. Br. at 36–37. In addition, Drexel does not dispute that Kelly suffers from an impairment that causes him to walk with a limp or that walking is a major life activity. Br. at 12 n. 8. Thus, the burden rests with Kelly to show that his injury "substantially limits" his ability to walk.

The ADA does not define "major life activities." *Bolton v. Scrivner, Inc.,* 36 F.3d 939, 942 (10th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1104, 130 L.Ed.2d 1071 (1995). The EEOC regulations, however, provide, that an individual is substantially limited in a major life activity if he is "[u]nable to perform a major life activity that the average person in the general population can perform" or is "[s]ignificantly restricted as to the condition, manner or duration under which [he] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j). In relevant part, the regulations suggest considering "[t]he nature and severity of the impairment."[4] 29 C.F.R. § 1630.2(j)(2)(i). Kelly admits that he is able to walk so the question presented is whether he adduced sufficient evidence from which a factfinder reasonably could conclude that the nature and severity of his injury significantly restricted his ability to walk as compared with an average person in the general population.

color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of the blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required. 43 Pa. Cons.Stat. Ann. § 955(a).

4. The regulations also provide that the decision maker should consider "[t]he duration or expected duration of the impairment" and "[t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j). These provisions are not determinative in this case.

When asked during his deposition about the limitations on his walking, Kelly stated that he believed that he could not walk "more than a mile or so" and that he "certainly couldn't jog." App. at 467. He also stated that when climbing stairs, "I have to pace myself slower, and I would, naturally, hold onto the rail." Id. Dr. Z.B. Friedenberg, M.D., Kelly's treating physician, submitted the following statement:

> Mr. Kelly has been under my care since December of 1987, for severe problems with his right hip joint.
>
> The diagnosis on this patient was severe post-traumatic degenerative joint disease of the right hip and protrusio acetabulum of the right hip joint.
>
> The patient's condition causes him great difficulty in walking around.

App. at 334. Kelly, however, presented no evidence that he required any special devices like a cane or crutches to aid him in walking. The district court held "as a matter of law that [Kelly's] trouble climbing stairs, which requires him to move slowly and hold the handrail, does not substantially limit his ability to walk." Kelly, 907 F.Supp. at 874. We will affirm the district court's holding in this regard.

The EEOC Compliance Manual[5] notes that most ADA complaints involve questions about an individual's ability to work but the manual recognizes that this ability need not be an issue. 2 EEOC Compliance Manual § 902, at 902–18 (1995); see also Hamm v. Runyon, 51 F.3d 721, 724 n. 3 (7th Cir.1995) (noting dearth of cases addressing substantial limits on ability to walk). The manual points out, for instance, that "if an individual's arthritis makes it unusually difficult (as compared to most people or to the average person in the general population) to walk, then the individual is substantially limited in the ability to walk ... [and] one would not need to ascertain whether the individual is also substantially limited in working." 2 EEOC Compliance Manual § 902, at 902–18.

The manual also provides the following two examples relating to walking:

> Example 1—CP has a permanent knee impairment that causes him pain when he walks for extended periods. He can walk for ten miles at a time without discomfort, but he experiences pain on the eleventh mile. CP's knee impairment does not substantially limit his ability to walk. The average person in the general population would not be able to walk for eleven miles without experiencing some discomfort.
>
> Example 2—CP, who has sickle cell anemia, frequently experiences severe back and joint pain. As a result of the sickle cell disease, CP often cannot walk for more than very short distances. CP's impairment (sickle cell anemia) substantially limits his ability to walk. The average person in the general population can walk for more than very short distances.

Id. at 902–17.

While the severity of Kelly's injury falls somewhere between the cases discussed in these examples, both the regulations and the manual make clear that comparatively moderate restrictions on the ability to walk are not disabilities. The regulations state:

> [A]n individual who, because of an impairment, can only walk for very brief periods of time would be substantially limited in the major life activity of walking. An individual who uses artificial legs would likewise be substantially limited in the major life activity of walking because the individual is unable to walk without the aid of prosthetic devices.

29 C.F.R. app. § 1630.2(j) (emphasis added). The regulations further provide:

> An individual is not substantially limited in a major life activity if the limitation ... does not amount to a significant restriction when compared with the abilities of the average person. For example, an individual who had once been able to walk at an extraordinary speed would not be substantially limited in the major life activity of walking if, as a result of a physical impair-

---

5. The manual explains that it was "issued for use by EEOC investigators when investigating charges of discrimination under the ADA" and that section 902 in particular provides guidance for determining whether an individual should be considered disabled. 2 EEOC Compliance Manual § 902, at 1.

ment, he or she were only able to walk at an average speed, *or even at moderately below average speed.* *Id.* (emphasis added). Similarly, the manual states that "[t]o rise to the level of a disability, an impairment must significantly restrict an individual's major life activities. Impairments that result in only mild limitations are not disabilities." 2 *EEOC Compliance Manual* § 902, at 902–19.

Kelly points to no case in which a court has held that a plaintiff's moderate difficulty walking or climbing stairs sufficed to constitute a "disability" under the ADA. In fact, it appears that in the several district court cases in which the issue has arisen, the courts have rejected such claims. *See Graver v. National Eng'g Co.,* No. 94–C–1228, 1995 WL 443944 (N.D.Ill. July 25, 1995); *Stone v. Entergy Servs., Inc.,* No. 94–2669, 1995 WL 368473 (E.D.La. June 20, 1995); *Lowe v. Angelo's Italian Foods, Inc.,* No. 93–1233–PFK, 1994 WL 675027 (D.Kan. Nov. 18, 1994), *aff'd in part, rev'd in part,* 87 F.3d 1170 (10th Cir.1996); *Richardson v. William Powell Co.,* No. C–1–93–528, 1994 WL 760695 (S.D.Ohio Nov. 10, 1994).

For example, in *Stone v. Entergy Servs., Inc.,* the plaintiff testified that due to his bout with polio, he suffered from "muscle weakness, partial paralysis, one leg longer than the other and one foot longer than the other." 1995 WL 368473, at *3. The plaintiff also claimed limited endurance, an inability to climb more than two flights of stairs without resting, difficulty descending stairs because his right foot could not support his weight, an inability to run, limited motion in his body, difficulty bending over without support, an inability to keep pace with others when walking in a group, and difficulty maintaining his balance generally. *Id.* The employer's expert physician, however, testified that the plaintiff had a "total body impairment of 15%," that he was not disabled, and that his "post polio syndrome [was] mild enough that he [did] not require the use of any braces, canes, crutches, or a wheelchair." *Id.* On these facts, the district court granted summary judgment in favor of the employer, holding that the plaintiff failed to show a "disability." As in this case, the court in

*Stone* noted that the plaintiff failed to answer his employer's arguments with any legal precedent or evidence of substantial limitation. The court explained that "[a]lthough plaintiff cannot walk briskly, and has some trouble climbing stairs, I find that his ability to walk is not substantially limited nor significantly restricted." *Id.* at *4.

Similarly, in *Richardson v. William Powell Co.* the plaintiff testified that she suffered from degenerative arthritis in her hip, which "cause[d] her to walk with a noticeable limp" and "made it difficult for her to climb stairs." 1994 WL 760695, at *3, *7. Despite this testimony, the district court granted summary judgment in favor of the employer on the grounds that the plaintiff failed to show that "her condition interfered with any major life activity." *Id.* at *7. The district court emphasized that the plaintiff did not allege that her impairment adversely affected her work, that her doctor did not place any restrictions on her activities, and that she regularly climbed stairs at home and at work. *Id.*

In *Graver v. National Eng'g Co.* the plaintiff suffered from arthritis in his left ankle and testified that he "walked with a pronounced limp and experienced significant pain while walking." 1995 WL 443944, at *1, *10. He stated that he "was not able to walk on grass or other non-level surfaces" and that he "walked more slowly than [he] would have walked absent the condition of [his] left ankle." *Id.* at *10. The district court found that "[a]lthough plaintiff walks with a marked limp, there is no evidence that his limp significantly impaired his ability to walk, care for himself, or perform the functions of his job." *Id.* at *11. Thus, the court granted summary judgment for the employer. *Id.* at *12.

Finally, in *Lowe v. Angelo's Italian Foods, Inc.* the district court addressed the plaintiff's dual claim that she was substantially limited in her ability to walk and to work. 1994 WL 675027, at *4–*5. The employer dismissed the plaintiff, a kitchen manager in a restaurant, soon after she informed the employer that she had been diagnosed with multiple sclerosis and no longer could bend, stoop, or carry heavy objects. *Id.* at *1. Her physician had written to her employer as follows:

Because of her neurological problems she fatigues exceedingly easily and needs to be

able to sit down occasionally. She is not going to be able to do lots of stooping, bending and cannot carry anything heavy (greater than 15 lbs.) and anything up to 15 lbs. only occasionally. She should avoid stairs. She needs to use a hand rail if she has to climb stairs, so cannot climb stairs and carry anything.

*Id.* at *4.

The district court noted that "[t]here was no evidence of the impact of [her impairment] on [her] life away from work. To the contrary, the only evidence in the case focuses on the effect of these limitations upon [her] ability to perform her job." *Id.* at *5. On these facts, the court held that the plaintiff failed to show that her impairment substantially limited her ability to work or to walk and granted summary judgment against the plaintiff. *Id.* We recognize that the Court of Appeals for the Tenth Circuit in *Lowe v. Angelo's Italian Foods, Inc.,* 87 F.3d 1170 (10th Cir.1996), substantially impaired *Lowe*'s validity as a precedent by reversing the summary judgment on the ADA claim because the plaintiff "presented evidence which creates a genuine issue of fact with respect to whether her ability to lift is substantially impaired." *Id.* at 1172. The court of appeals, however, did not address the walking issue.

Moreover, in two other cases district courts have rejected contentions that residual impairments after serious injuries constituted disabilities under the ADA. *See Rogers v. International Marine Terminals, Inc.,* No. 94–0056, 1995 WL 16787 (E.D.La. Jan. 17, 1995), *aff'd,* 87 F.3d 755 (5th Cir.1996); *Blanton v. Winston Printing Co.,* 868 F.Supp. 804 (M.D.N.C.1994). In *Blanton v. Winston Printing Co.* the district court granted the employer summary judgment where the plaintiff had torn his medial meniscus in his knee. 868 F.Supp. at 806, 808. The plaintiff presented evidence that he had "retain[ed] slight limitation of his knee function" and could not "run well nor climb stairs easily." *Id.* at 806. The district court found that while the plaintiff may have been disabled at times, impairments of such short duration did not qualify as disabilities. *Id.* at 807. The court explained that the plaintiff's "post-injury physical condition [was] nearly as

good as it was prior to the tear" and that his "inability to run briskly or climb stairs as easily as he could before the injury are not sufficient residual effects to constitute a 'disability.'" *Id.*

In *Rogers v. International Marine Terminals, Inc.* the employer laid off the plaintiff after he took sick leave for treatment of bone spurs, ligament damage, and gout in the right ankle. 1995 WL 16787, at *1. The district court granted the employer summary judgment because the plaintiff had averred to his employer that his impairment was merely "a temporary condition and not a permanent disability." *Id.* at *3. Relying on *Blanton,* the district court found that even accepting the plaintiff's later statement that he still was suffering "from a permanent, anatomical, whole-body impairment of thirteen percent," such a limitation did not amount to a disability. *Id.* The court of appeals affirmed, holding that there was "no evidence that Roger's impairment substantially limits his ability to stand and walk." *Rogers,* 87 F.3d at 759.

■ It is difficult, indeed perhaps not possible, to draw a bright line delineating the point at which a condition affecting an employee's ability to walk can be regarded as a disability within the ADA. Yet we agree with the general thrust of these district court cases. While we are not unfeeling with respect to Kelly's condition, still we simply cannot regard it as a disability under the ADA as it does not substantially limit him in the relevant major life activity, walking. As the court indicated in *Dutcher v. Ingalls Shipbuilding,* "[a] physical impairment, standing alone, is not necessarily a disability as contemplated by the ADA." 53 F.3d 723, 726 (5th Cir.1995). Kelly is impaired but not disabled.

■ Kelly also suggests that Drexel may have terminated him because he was perceived as being disabled. Br. at 36–37. Under the ADA and the EEOC regulations, a claimant may be considered disabled even if his impairment does not substantially limit a major life activity, if his impairment "is treated by a covered entity as constituting such limitation." 29 C.F.R. § 1630.2(*l*)(1).[6] Our analysis of this claim focuses not on Kelly

---

6. Kelly does not suggest that subsections (2) or (3) of section 1630.2(*l*) are applicable. Subsec-

and his actual abilities, but rather on the reactions and perceptions of the persons interacting or working with him. 2 *EEOC Compliance Manual,* § 902, at 902–3 to 902–4.

■ In support of this claim, Kelly alleges only that his limp was "visible and apparent," br. at 37, and that Graham was aware of his problem, app. at 157. The district court properly rejected this argument. *Kelly,* 907 F.Supp. at 874–75. Graham testified at his deposition that he did not consider Kelly's impairment disabling. App. at 501. *See Rogers,* 87 F.3d at 760; *Stone,* 1995 WL 368473, at *4. Moreover, we hold that the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that that perception caused the adverse employment action. *See Chandler v. City of Dallas,* 2 F.3d 1385, 1393 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994) (holding that even employer's belief that plaintiff could not perform particular task safely does not establish that employer regarded plaintiff as disabled); *cf. Cook v. Rhode Island Dept. of Mental Health, Retardation, and Hosps.,* 10 F.3d 17, 25 (1st Cir.1993) (holding that employer regarded plaintiff as disabled where employer believed that plaintiff's impairment foreclosed broad range of employment options in relevant industry). If we held otherwise, then by a parity of reasoning, a person in a group protected from adverse employment actions *i.e.,* anyone, could establish a *prima facie* discrimination case merely by demonstrating some adverse action against the individual and that the employer was aware that the employee's characteristic placed him or her in the group, *e.g.,* race, age, or sex.

Overall, we are satisfied that Kelly is not disabled within ADA on either basis that he advances on this appeal. Thus, the district court properly granted Drexel summary judgment on that claim and under the parallel provisions of the PHRA.

■ We carefully have considered Kelly's age discrimination claims and are in full accord with the district court's conclusion that Drexel was entitled to a summary judgment on them. Consequently, we will affirm its order for summary judgment on those claims without discussion, except to point out that while Kelly questions the economic necessity for Drexel having reduced its employee force, it hardly would be appropriate for us to second guess that management decision. We are dealing, after all, with discrimination statutes which are not intended "to handcuff the managers and owners of businesses to the *status quo.*" *Gray v. York Newspapers, Inc.,* 957 F.2d 1070, 1083 (3d Cir.1992). Thus, there is a qualitative distinction between a court reviewing a business determination that there should be a reduction in force and a court considering an employee's claim that an employer discriminated against him in reducing its force. The first determination is a management decision with which a court should be loath to interfere. The second determination requires a conventional analysis under the relevant anti-discrimination statute.

## III. CONCLUSION

For the foregoing reasons, we will affirm the order for summary judgment of November 9, 1995, and the order of December 7, 1995, denying reconsideration.

Before: SLOVITER, Chief Judge, and BECKER, STAPLETON, MANSMANN, GREENBERG, SCIRICA, COWEN, NYGAARD, ALITO, ROTH, LEWIS, and McKEE, Circuit Judges, and FISHER, District Judge.

## SUR PETITION FOR REHEARING

### Sept. 20, 1996

The petition for rehearing filed by the appellant, Francis J. Kelly, in the above cap-

---

tion (2) provides that an individual "has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment." 29 C.F.R. § 1630.2(*l*)(2). Subsection (3) states that an individual "has none of the impairments defined [by the regulations] but is treated by the covered entity as having a substantially limiting impairment." 29 C.F.R. § 1630.2(*l*)(3).

tioned matter having been submitted to the judges who participated in the decision of this court and to all the other available circuit judges of the court in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied.