E. Michael **SALLEY**, Appellant,

v.

**CIRCUIT CITY STORES, INC.**

No. 97–1947.

United States Court of Appeals,
Third Circuit.

Argued Sept. 25, 1998.

Decided Nov. 19, 1998.

H. Francis DeLone, Jr. (Argued), Wayne, PA, for Appellant, E. Michael Salley.

G. Thompson Bell, III (Argued), Jeffrey D. Bukowski, Stevens & Lee, Reading, PA, for Appellee, Circuit City Stores, Inc.

Before: BECKER, Chief Judge, WEIS, and GARTH, Circuit Judges.

## OPINION OF THE COURT

BECKER, Chief Judge.

E. Michael Salley appeals from the judgment of the district court in favor of the defendant, Circuit City Stores, Inc. ("Circuit City"), in a case that he brought under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12117 (1994). Salley overcame a long-term addiction to heroin and alcohol and remained drug-free for ten years. During that time, he became a Circuit City store manager. Unfortunately for Salley and for Circuit City, he suffered a relapse into drug and alcohol addiction. Although he sought treatment after several months of relapse, Circuit City discovered his drug use and other apparent violations of company drug policy. These violations included Salley's missing work time because of drug use and his alleged drug involvement with a subordinate, whose drug use he failed to report. Circuit City fired him two days after Salley signed a statement admitting his misconduct.

Salley sued under the ADA and the Pennsylvania Human Rights Act ("PHRA"). The District Court granted summary judgment against him on the grounds that he was a "current" drug user who was fired for such use. We will affirm the judgment of the District Court, though on different grounds, i.e. that no reasonable jury could conclude that Salley was discharged for his disability rather than his drug use and concomitant violations of Circuit City's drug policy.

### I.

Salley, who is forty-six years old, has engaged in the illegal use of drugs for large portions of his adult life. At approximately age seventeen, Salley became addicted to heroin. He remained addicted to heroin for approximately the next thirteen years, during which time he also became addicted to alcohol. He participated in several inpatient and outpatient recovery programs of various lengths in an attempt to control his addiction to alcohol and heroin. He ultimately succeeded, and was able to abstain from the consumption of alcohol or illegal drugs from

approximately June 1983 until the fall of 1993.

In August 1988, Circuit City hired Salley as a video sales counselor. He performed well enough that he was brought into management in 1989 or 1990. In early 1990, he became a store manager. One of Salley's specific responsibilities was to enforce Circuit City management policies, including its drug policy, which provided that managers "will work to ensure that employees are free from the effects of alcohol and illegal substances, whether consumed on or off Company property." (Appendix at 43). In 1991, he informed a superior of his past drug addiction, but also told him, truthfully, that he had been successfully abstinent for years. The superior reassured him that no action would be taken against him.

In the fall of 1993, Salley resumed drinking alcohol. Late that year or early in 1994, Salley discovered that a subordinate of his, Kevin Heavner (now deceased), used drugs. He began to use heroin with Heavner, using Heavner's drug connections to purchase heroin. From April to August 1994, his renewed addiction continued. Salley used heroin at least once a day, and eventually spent between $500 and $600 each week on the drug. He sometimes left work during his lunch break to use heroin, and often worked while under the influence of heroin, though the use did not affect his performance. However, when Salley did not take heroin regularly, he would experience withdrawal symptoms that would distract him at work and prevent him from performing to his maximum potential. In general, his heroin addiction did not prevent him from performing his job functions properly. Salley never engaged in heroin use on Circuit City's premises.

On August 24, 1994, Salley sought treatment through Circuit City's confidential employee assistance program. On August 29, he began detoxification treatments. On September 16, apparently prompted by rumors of Salley's inappropriate behavior, Circuit City's Loss Prevention Department interviewed him on various matters, including his possible drug use and connection to Kevin Heavner's drug use. When the investigation began, Salley first refused to cooperate, based on the advice of the people who were treating his addiction at the time; they apparently assured him on several occasions that the details of his treatment would be kept confidential, and encouraged him to take steps to preserve his confidentiality. As a result, in the Loss Prevention interview Salley was evasive and he lied about his recent drug use.

By September 19, Salley had consulted an attorney, and he offered to give a written statement. Two days later, he worked with the Loss Prevention investigator to formulate a signed, handwritten statement. In this statement, Salley admitted to engaging in the use of alcohol and heroin; to using heroin on a regular basis before work, after work, and occasionally during lunch breaks. In addition, Salley admitted to violating management policies and his own management responsibilities by failing to report Heavner's drug use; to purchasing heroin through Heavner; to using heroin with Heavner; and to telling unspecified lies and refusing to cooperate during the earlier interviews. Although Salley maintains that he signed the September 21 statement under duress, he concedes that to the best of his knowledge all the information set forth in the statement is accurate.

■ On September 23, Circuit City fired Salley. After he lost his job, he resumed heroin use and went through several cycles of treatment and relapse before stabilizing. Thereafter, he brought suit, alleging that he had been fired in violation of the ADA and the PHRA. Circuit City responded that Salley was lawfully fired for violating Circuit City's drug policy by engaging in the use of illegal drugs to the knowledge of other employees, discussing drugs at the workplace, being under the influence of drugs at work, arriving late because of drug use, and failing to report an employee's [Heavner's] drug use. The District Court granted Circuit City's motion for summary judgment on the grounds that Salley was a "current" drug user and was therefore unprotected by the ADA.[1]

1. Although they are not bound to do so, Pennsylvania courts generally interpret the PHRA in accord with its federal counterparts, among them the ADA. See *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir.1996). This is due in part to the

 We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. The court will exercise plenary review over a District Court's grant of summary judgment. *See Olson v. General Elec. Astrospace*, 101 F.3d 947, 951 (3d Cir.1996). We apply the same test the District Court should have applied in the first instance. *See Lawrence v. National Westminster Bank, New Jersey*, 98 F.3d 61, 65 (3d Cir.1996). We must therefore determine whether the record, when viewed in the light most favorable to Salley, shows that there is no genuine issue of material fact and that Circuit City was entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 329–30 (3d Cir.1995).

 Salley argues that the District Court was wrong to grant summary judgment against him on the grounds that he was "currently" using drugs when fired and so was not protected by the ADA. Circuit City responds that, properly understood, "current" use includes use within a few weeks of an adverse employment action, and that in any event Salley failed to raise an inference of discrimination against him on the basis of his disability of drug and alcohol addiction when it fired him for drug-related misconduct. Although Salley raises interesting issues about the meaning of 42 U.S.C. § 12114(a) and (b), the drug and alcohol use provisions of the ADA, we will reserve these difficult questions for another day. If Circuit City's actions had been based on its discovery of Salley's drug use alone, we would have to decide whether his use was current, but because Salley's misconduct extended beyond simple use to work-related misbehavior we resolve the case on those grounds.[2]

## II.

 Circuit City asserts that there is no evidence that Salley was fired because of his

---

substantial similarity between the definition of "handicap or disability" under the PHRA and the definition of "disability" under the ADA. *See id.; Fehr v. McLean Packaging Corp.*, 860 F.Supp. 198, 200 (E.D.Pa.1994). We have held that a claim under the PHRA is coextensive with a claim under the ADA. *See Kelly*, 94 F.3d at 105. Accordingly, the district court applied its analysis under the ADA to Salley's PHRA claim and dismissed it as well. The parties do not contest this aspect of the case on appeal.

2. Section 12114(a) provides that "[f]or purposes of [the ADA], the term 'qualified individual with a disability' shall not include any employee or applicant who is currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use." Section 12114(b) provides protection to persons who have sought rehabilitation and are no longer using drugs. The regulations accompanying the ADA provide that the term "currently engaging" is not intended to be limited to the use of drugs on the day of, or within a matter of days or weeks before, the employment action in question. Rather, "the provision is intended to apply to the illegal use of drugs that has occurred recently enough to indicate that the individual is actively engaged in such conduct." 29 C.F.R. § 1630.3 App. (1996). Similarly, the Equal Employment Opportunity Commission's Technical Assistance Manual on the ADA states:

"Current" drug use means that the illegal use of drugs occurred recently enough to justify an employer's reasonable belief that involvement with drugs is an on-going problem. It is not limited to the day of use, or recent weeks or days, in terms of an employment action. It is determined on a case-by-case basis.

Equal Employment Opportunity Commission, Technical Assistance Manual on the Employment Provisions (Title I) of the ADA § 8.3 (1992). This section of the ADA ensures that current use, even if it is a natural consequence of an addiction disability, may be grounds for termination under the ADA. Congress has obviated the need for us to determine the metaphysical question whether use is part and parcel of an addiction disability; if the use is current, the ADA does not apply.

We note that we have found no case in which a three-week period of abstinence has been considered long enough to take an employee out of the status of "current" user. Other courts have found "current" use when presented with periods of abstinence as long or longer than Salley's. *See, e.g., Collings v. Longview Fibre Co.*, 63 F.3d 828, 833 (9th Cir.1995) (use in weeks and months prior to discharge was current use), *cert. denied*, 516 U.S. 1048, 116 S.Ct. 711, 133 L.Ed.2d 666 (1996); *Baustian v. Louisiana*, 910 F.Supp. 274 (E.D.La.1996) (seven-week abstinence). It has generally taken much longer periods of abstinence than three weeks to prevail against a § 12114(a) defense. *See United States v. Southern Management Corp.*, 955 F.2d 914(4th Cir.1992) (one-year abstinence was not current use under identical language in the Fair Housing Act); *Herman v. City of Allentown*, 985 F.Supp. 569 (E.D.Pa.1997) (nine-month abstinence was not current use). For an interesting and controversial case discussing how "current" use may be determined on a case-by-case basis, see *Teahan v. Metro–North Commuter R.R. Co.*, 951 F.2d 511 (2d Cir.1991).

addiction, as opposed to his misconduct. Circuit City is correct. Even if Salley has made out a prima facie case of discrimination, which he has not, Circuit City has proffered a legitimate, non-discriminatory reason for firing him—his violation of management policies. To defeat summary judgment at this point, the plaintiff has the burden of producing evidence from which a fact finder could reasonably either disbelieve the employer's articulated legitimate reasons or believe that a discriminatory reason was more likely than not a cause of the employer's action. *See Olson,* 101 F.3d at 951.

Salley's claim of handicap discrimination derives essentially from the fact that he revealed his history of addiction to a supervisor a few years before his relapse into addiction. *Kelly v. Drexel University,* 94 F.3d 102 (3d Cir.1996), affirming summary judgment for an employer under the ADA, held that "the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that that perception caused the adverse employment action." *Id.* at 109. In this case, the District Court found that there was a "complete absence of evidence from which a fact finder could reasonably conclude that Defendant's reasons for discharging Plaintiff were pretextual." Slip Op. at 22. We agree.

No action was taken on Salley's revelations. It was only when Circuit City discovered evidence that his drug use was no longer just a past problem that the Loss Prevention department acted. Other employees were aware of his drug use; he discussed drugs at the workplace; he reported to work under the influence of drugs; he was late because of his drug use and sometimes left work to use drugs; and he failed to report a subordinate's drug use, instead engaging in drug use with that subordinate. Circuit City legitimately feared that such acts would be harmful to its business.

Salley has offered no evidence to suggest that drug policy violations were tolerated for non-addicts but used to justify firing addicts. In fact, Salley has failed to state exactly why he thinks he was fired for his addiction instead of his misconduct. He alleges that information from his treatment was revealed to Circuit City management in violation of Circuit City's supposed promises of confidentiality, but this does not relate to his claim of disability discrimination, even if it is true. No reasonable jury could conclude on the record before us that Salley was fired for his addiction, as opposed to the misconduct Circuit City investigated.

The holding that drug-related misconduct is a legitimate, non-discriminatory reason for termination is supported by § 12114(c), under which an employer may hold an alcoholic or drug-dependent employee "to the same qualification standards for employment or job performance and behavior that such entity holds other employees, even if any unsatisfactory performance or behavior is related to the drug use or alcoholism of such employee." 42 U.S.C. § 12114(c). Section 12114(c) operates to allow employers to respond to addiction-related misconduct in a way that they cannot respond to other disability-related misconduct, and it applies to Circuit City's anti-drug policy in this case.

 The application of a facially neutral policy to a disabled employee may be an unlawful ground for termination if the employee's violation stems from his or her disability; the employer may not use established policies regulating behavior to short-circuit the required analysis of whether the employee can perform the essential functions of the job with a reasonable accommodation. For example, an employer might require that a job be performed standing but a plaintiff's disability might prevent him or her from standing all the time. If a seating accommodation could reasonably be provided, then the employee's inability to comply with the employer's otherwise legitimate policy would not preclude the employee from making a valid ADA claim. But Congress has decided to treat drug and alcohol addiction differently from other disabilities by ensuring that employers do not have to go through the accommodation process in these cases. *See Den Hartog v. Wasatch Academy,* 129 F.3d 1076, 1086–87 (10th Cir.1997).

### III.

Although Salley has made admirable attempts to overcome his drug addiction, he

underwent an extended period of renewed addiction while he was entrusted with a position of responsibility at Circuit City. It is praiseworthy that he sought treatment for his addiction before he was discovered, but there is no evidence that his addiction, as opposed to his drug-related misconduct, caused Circuit City to fire him. The judgment of the District Court will be affirmed.