Daniel E. LAW

v.

**GARDEN STATE TANNING**

**No. CIV. A. 00–CV–581.**

United States District Court, E.D. Pennsylvania.

Feb. 12, 2001.

Brooke M. Boyer, Reading, PA, for Daniel E. Law, Plaintiffs.

Michael J. Ossip, Morgan, Lewis & Bockius LLP, Gregory T. Mayes, Morgan, Lewis & Bockius LLP, Philadelphia, PA, for Garden State Tanning, Inc., Defendants.

**MEMORANDUM AND ORDER**

McLAUGHLIN, District Judge.

The plaintiff, Daniel E. Law, is suing his former employer, defendant Garden State Tanning ("GST"), under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA") and the Pennsylvania Human Relations Act, 43 Pa.C.S. § 951 *et seq.* ("PHRA"). The plaintiff alleges that GST improperly requested a psychiatric exam of the plaintiff during the course of his outpatient drug recovery program, and that GST improperly terminated him upon learning that he was a paranoid psychotic. The defendant and the plaintiff have each moved for summary judgment. The Court will grant the defendant's motion and deny the plaintiff's motion.

### I. Background

The plaintiff was employed at the defendant's leather manufacturing and processing plant in Fleetwood, Pennsylvania for approximately seven years. At all times relevant to the case, GST had a Chemical Substance and Alcohol Control Policy (the "Policy") in effect, which the plaintiff received and understood. The Policy prohibits employee use of a controlled substance, alcohol, or any other currently legal substance in a way that interferes with work safety, conduct, performance, or attendance of any employee. If an employee tested positive for drug use, GST would refer the employee to a drug and alcohol treatment program rather than immediately terminating him. Continued employment would be contingent on the employee's completion of a recovery treatment program within a reasonable period of time. *See* Law Dep., D. Ex. A, 29–30, 32, 39, 41.[1]

---

**1.** Hereinafter, the defendant's exhibits attached to its motion for summary judgment will be labeled "D. Ex." followed by the exhibit letter and a page number. Exhibits attached to the plaintiff's motion for partial summary judgment will be labeled "Pl.Ex." followed by the exhibit number and page number.

On February 6, 1998, the plaintiff complained to the defendant of a rash on his arms. He was sent to a local medical services provider, where he was diagnosed with chromium poisoning. Pursuant to the Policy, the provider also tested the plaintiff for drug use and found traces of marijuana, which the plaintiff admitted to having smoked regularly for 29 years. In accordance with the Policy, the defendant suspended the plaintiff from work, referred him to an outpatient treatment program, and stated that failure to complete the program would result in immediate termination. *See* Law Dep., D. Ex. A, 43–45, 51–52, 57, 64.

The plaintiff returned to work on February 26, 1998, once he presented a clean urine sample, but the treatment program continued with evening drug treatment sessions. *See* Law Dep., D. Ex. A, 80–81. When the plaintiff failed to meet treatment objectives, his therapists suspected that he might have a mental illness that was hindering his progress in the treatment program. In March of 1998, the therapists recommended to GST that the plaintiff have a psychiatric examination. *See* Warne Dep., D. Ex. L, 40, 43–44; Kiss Aff., D. Ex. N, ¶ 3. The defendant requested such an exam. *See* Klein Dep., D. Ex. P, 20.

A psychiatrist examined the plaintiff on April 15, 1998, diagnosed him as a paranoid psychotic, and prescribed an anti-psychotic medicine. *See* Am. Compl., ¶ 18; Chastka Dep., D. Ex. O, 9, 12–13. Although the plaintiff continued to work at the defendant's factory, even working 26 hours of overtime over a 3–month period, the plaintiff failed to take his medication properly. (The plaintiff claims that the medication had painful side effects.) *See* Law Dep., D. Ex. A, 113–14, 116–18; Law Dep., Pl.Ex. 2, 147. The plaintiff's progress in the outpatient program remained unsatisfactory. Consequently, the outpatient program referred the plaintiff to a 14–day inpatient program, which the plaintiff agreed to attend. *See* Durand Dep., D. Ex. H, 38–40, 48–49; Kern Dep., D. Ex. K, 9, 44–45, 48, 57, 86–87; Law Dep., D. Ex. A, 127, 129, 133. The plaintiff was placed on short-term disability at work and was told that he could return once he completed the program. The plaintiff dropped out of the program after one day and was deemed not to have completed his drug treatment program. Thereafter, on May 20, 1998, the defendant terminated the plaintiff. *See* Law Dep., D. Ex. A, 129–30, 138, 154; Kern Dep., D. Ex. K, 91, 93.

The plaintiff contends that he was impermissibly terminated under the ADA and PHRA because the defendant learned that he was a paranoid psychotic. The plaintiff also argues that the defendant's request for a psychiatric exam was a wrongful inquiry under the ADA. The defendant has moved for summary judgment, claiming that Law has failed to establish a *prima facie* case of discrimination; that its employment decision was based on Law's failure to complete the drug treatment program; that Law failed to exhaust his administrative remedies; and that the psychiatric exam was a business necessity unrelated to the defendant's decision to terminate. The plaintiff has also moved for partial summary judgment on the wrongful medical inquiry claim and the issue of "disability" under the ADA.

## II. Discussion

### A. Legal Standard for Summary Judgment

A motion for summary judgment shall be granted where all of the evidence demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c). The moving party has the initial burden of

demonstrating that no genuine issue of material fact exists. Once the moving party has satisfied this requirement, the non-moving party must present evidence that there is a genuine issue of material fact. The non-moving party may not simply rest on the pleadings, but must go beyond the pleadings in presenting evidence of a dispute of fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In deciding a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party. *See Josey v. John R. Hollingsworth Corp.,* 996 F.2d 632, 637 (3rd Cir.1993).

### B. Termination Claim

#### 1. Summary Judgment under the ADA and PHRA

The decision whether to grant or deny summary judgment in an employment discrimination action under the ADA is governed by the Supreme Court's burden-shifting analysis in *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), recently clarified in *Reeves v. Sanderson Plumbing Products,* 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).[2] *See McNemar v. Disney Store, Inc.,* 91 F.3d 610, 619 (3d Cir.1996). Under this analysis, the plaintiff must first make out a *prima facie* case of discrimination. Once the plaintiff does so, the defendant must present a legitimate, non-discriminatory reason for the negative employment decision. In order to survive summary judgment, the plaintiff must then show that the reason presented by the defendant is pretextual, either by showing that the defendant's reason is "unworthy of credence," *Texas Dept. of Community Affairs v. Burdine,* 450 U.S.

248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), or by showing that the real motivation was more likely than not discriminatory. *See McNemar,* 91 F.3d at 619; *see also Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir.1994); *Reeves,* 120 S.Ct. at 2108.

#### 2. The Plaintiff's Prima Facie Case

■ To demonstrate a *prima facie* case of disability discrimination, a plaintiff must establish the following three requirements: (1) that he is "disabled" within the meaning of the ADA; (2) that he is qualified for the particular job; and (3) that he has suffered an adverse employment action because of the disability. *See Deane v. Pocono Med. Ctr.,* 142 F.3d 138, 142 (3d Cir. 1998). Law has not demonstrated the first two factors—*i.e.,* that he was "disabled" or that he was a "qualified individual" at the time the defendant terminated his employment.

#### a. Disability Under the ADA

■ In order to be considered "disabled" under the ADA, a plaintiff must show that (1) he has a physical or mental impairment that substantially limits one or more of his major life activities, (2) he has a record of such an impairment, or (3) he is regarded as having such an impairment. *See* 42 U.S.C. § 12102(2). Major life activities consist of tasks such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(i). The Third Circuit has determined that "thinking" is also a major life activity. *Taylor v. Phoenixville School District,* 184 F.3d 296, 297 (3d Cir.1999). The plaintiff has failed to demonstrate that his impairment substantially limited his

**2.** Although this discussion focuses on the ADA, the legal analysis is identical to, and treated coextensively with, that of the PHRA claims. *See Taylor v. Phoenixville Sch. Dist.,*

184 F.3d 296, 306 (3d Cir.1999) (citing *Kelly v. Drexel Univ.,* 94 F.3d 102, 105 (3d Cir. 1996)).

thinking, that he had a record of such impairment, or that he was regarded as having such an impairment.

In order to be "substantially limited" in a major life activity, an individual must be significantly restricted in the performance of that activity, compared to the average person. *See* 29 C.F.R. § 1630.2(j). It is not enough to show that the typical person with that impediment is significantly restricted; the individual himself must be significantly restricted. *See Sutton v. United Airlines, Inc.,* 527 U.S. 471, 482–83, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). The only evidence of restriction presented by the plaintiff is the deposition testimony of the examining doctor which describes a classic "textbook" case of paranoid psychosis. There is nothing on the record, relating specifically to the plaintiff, that shows that his thinking is substantially limited. Nor is there any indication that the plaintiff has "a record of such an impairment."

■ Moreover, Law has not shown that the defendant regarded him as having a substantially limiting impairment. The regulations implementing the ADA state that an employee is "regarded as disabled" when he: (1) has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation; (2) has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or (3) does not have a physical or mental impairment but is treated by an employer as having a substantially limiting impairment. *See* 29 C.F.R. § 1630.2(1). Therefore, an employee is regarded as disabled when he has an impairment or a perceived impairment which, as perceived, substantially limits one or more major life activities. The plaintiff must demonstrate not only that GST perceived him as having an impairment, but that GST regarded that impair-

ment as imposing a substantial limitation on a major life activity. *See Kelly v. Drexel University,* 94 F.3d 102, 109 (3d Cir. 1996); *Balliett v. Heydt,* Nos. CIV. A. 95–5184, 95–7182, 1997 WL 611609, at *4 (E.D.Pa. Sept.25, 1997), *aff'd,* 176 F.3d 471 (3d Cir.1999); *Kotas v. Eastman Kodak Co.,* No. 95–CV–1634, 1997 WL 570907, at *10 (E.D.Pa. Sept. 4, 1997), *aff'd,* 166 F.3d 1205 (3d Cir.1998).

■ The plaintiff attempts to carry this burden by pointing to the sequence of events surrounding his suspension and termination. *See* Pl. Resp. at 4. He has failed to show any direct evidence that the defendant regarded Law as being substantially impaired. The mere fact that GST requested a mental examination does not by itself establish that GST regarded Law as being disabled. *See Sullivan v. River Valley Sch. Dist.,* 197 F.3d 804 (6th Cir.1999). In fact, the record indicates just the opposite, *i.e.,* that GST considered the plaintiff to be quite able. GST allowed the plaintiff to continue working even after learning of his supposed disability, and even permitted him to work 26 hours of overtime. GST also assured Law that he could return to work upon his completion of the drug treatment program. Only after Law quit the drug treatment program prescribed for him was any adverse employment action taken. Thus, the plaintiff has failed to show that GST regarded him as "disabled."

### b. Qualified Individual Under the ADA

■ Nor can the plaintiff show that he was a "qualified individual" under the meaning of the ADA. The ADA states that a "qualified individual with a disability" does not include "any employee or applicant who is currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use." 42 U.S.C.

§ 12114(a). Law claims that the exclusion does not apply to him because he was terminated for his psychosis, not for his marijuana use. However, the record indicates otherwise. Law was first suspended from work when the marijuana problem became evident; his failure to take anti-psychotic medication was relevant only because it meant he would fail to complete the in-patient drug treatment program. The plaintiff himself admits that his termination was caused by his failure to complete the drug treatment program that he was required to complete because of his current drug use. *See* Law Dep. 153–54; Am. Compl. ¶ 24. Thus, Law was terminated for his drug use, and not for his psychosis.

■ Law also argues that the Section 12114(a) exclusion should not apply to him because he was not a "current" drug user when he was terminated on May 20, 1998. Law contends that there is no evidence that he used drugs or alcohol after February 8, 1998. *See* Pl. Mot. at 4. The Court agrees with another judge of this court who held that "current" drug use includes "illegal drug use that bears a temporal relationship to the employment action such that an employer may reasonably conclude at the time of the employment action that illegal drug use is an ongoing problem." *Salley v. Circuit City Stores, Inc.,* No. 96–6368, 1997 WL 701302, at *7 (E.D.Pa. Oct.29, 1997), *aff'd on other grounds,* 160 F.3d 977 (3d Cir.1998). Law was terminated on May 20, 1998, after the defendant learned that he had failed to complete his prescribed drug treatment program and that his 29–year history of drug use was therefore likely to continue. Thus, Law was a current user within the meaning of the ADA, and not a "qualified individual" entitled to protection.

Given the plaintiff's failure to produce evidence establishing that he was disabled within the meaning of the statute and that he was a qualified individual, even when viewing the evidence in the light most favorable to him, the plaintiff has failed to demonstrate a *prima facie* case of disability discrimination under the ADA.

### 3. *Pretext analysis*

Even if Law is assumed to have shown a *prima facie* case of discrimination, he has not carried his burden of showing pretext. Once a plaintiff has established a *prima facie* case of unlawful discrimination, the defendant must proffer a legitimate non-discriminatory reason for the negative employment action. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). If the defendant satisfies this burden, the burden shifts back to the plaintiff to show that the reason given is pretextual.

■ GST has shown a legitimate non-discriminatory reason for the termination. GST contends that the plaintiff was terminated because he voluntarily quit a prescribed drug rehabilitation program he had agreed to complete in accordance with company policy. The plaintiff admits that the defendant terminated his employment for this legitimate and non-discriminatory reason. *See* Am. Compl. ¶ 25. The defendant has satisfied the second step of the *McDonnell Douglas* analysis by providing legitimate, non-discriminatory reasons for its decision to terminate Law.

The burden then shifts back to Law to show that the reasons presented by the defendant are pretextual. Law has failed to produce any evidence showing this. He argues that the *McDonnell Douglas* test is inapplicable where there is direct evidence of discrimination. *See* Pl. Resp. at 6 (citing *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985)). In support of this, the plaintiff offers the deposition testimony of a supervisor at GST, stating that the

plaintiff was removed from the work force "because he wasn't taking his medication." Pl. Resp. at 7. This, however, does not constitute "direct evidence of discrimination." The plaintiff's failure to take his medication precipitated his failure to complete the drug rehabilitation program, a necessary prerequisite for him returning to work. The supervisor's statement is consistent with the defendant's legitimate, non-discriminatory reason, and there is no evidence of reliance on any other illegitimate criterion.

Viewing the evidence in the light most favorable to the plaintiff and taking his claims as true, the defendant has produced a legitimate reason to support a decision to terminate, which the plaintiff has failed to discredit. *See Fuentes,* 32 F.3d at 764, fn. 7. Because the plaintiff has failed to establish a *prima facie* case or carry its burden under the *McDonnell Douglas* framework, summary judgment for the defendant is appropriate on the issue of discrimination under the ADA and the PHRA.

### C. *Medical Inquiry Claim*

The plaintiff also argues that the defendant violated the ADA by wrongfully requesting the psychiatric examination.[3] Summary judgment will be granted for the defendant on this claim because the examination falls within the "business necessity" exception of the ADA. The Court does not reach the other issues raised by the defendant—whether the plaintiff exhausted his administrative remedies with respect to this claim, and whether the examination actually caused the plaintiff's termination.

■■ Medical examinations of current employees are acceptable under the ADA if they are "job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). There must be sufficient evidence for a reasonable person to doubt whether an employee is capable of performing the job, and the examination must be limited to determining an employee's ability to perform essential job functions. *See Sullivan,* 197 F.3d at 813. The plaintiff argues that the examination was not job-related because the psychiatrist was never asked to evaluate Law's ability to perform essential job functions. The defendant argues that completion of the drug rehabilitation program was a job requirement, and that the plaintiff was examined by a psychiatrist to determine whether he could successfully complete that program. The psychiatrist concluded that with appropriate medical treatment, the plaintiff could successfully complete the prescribed drug treatment program and, therefore, maintain his employment at GST.

The Court agrees with the defendant that the examination as a whole was job-related and consistent with business necessity.

An Order follows.

### ORDER

AND NOW, this 8th day of February, 2001, upon consideration of the Defendant's Motion for Summary Judgment (Docket # 10), all responses thereto, the Plaintiff's Motion for Partial Summary Judgment (Docket # 11), and all responses thereto, IT IS HEREBY ORDERED that the Defendant's Motion for Summary Judgment is GRANTED and the Plaintiff's Motion for Partial Summary Judgment is DENIED for the reasons expressed in the Memorandum of today's date.

---

**3.** The PHRA does not prohibit requests by employers for medical examinations. *See* 43 P.S. § 951 *et seq.* Thus, the plaintiff's wrongful inquiry claim can be considered under the ADA only.