

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-12-2007

# Barclay v. Amtrak

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-3482

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Barclay v. Amtrak" (2007). *2007 Decisions.* Paper 774.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/774

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 06-3482
_____

ROBERT A. BARCLAY,

Appellant

v.

AMTRAK

_____

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. Civ. No. 03-cv-02450)
District Judge:  Honorable Anita B. Brody
_____

Submitted Under Third Circuit LAR 34.1(a)
June 1, 2007

Before: SLOVITER, MCKEE AND AMBRO, <u>CIRCUIT JUDGES</u>

(Filed  July 12, 2007)

_____

OPINION
_____

PER CURIAM

     Robert Barclay appeals the order of the United States District Court for the Eastern

District of Pennsylvania granting summary judgment in favor of the defendant.  We will

affirm the District Court's order.

I.

Barclay, who suffers from irritable bowel syndrome (IBS), worked for many years as a locomotive engineer for Amtrak. In 1997 Barclay sought permission from Amtrak's medical department to take Bentyl, a medication for IBS, while operating a locomotive. Because Barclay's doctor was unwilling to certify him to operate a train while taking the medication,[1] he was placed on medical restriction from December 1997 until 1999.

In February 1999 Barclay received medical clearance to return to work without restriction, and in March 1999 he returned to work as a locomotive engineer. Between April 16, 1999 and May 11, 1999, Barclay had 17 unexcused absences from work. In August 1999, an Amtrak doctor confirmed that Barclay had been medically cleared to return to work as an engineer, and on September 30, 1999, Barclay was given a "time-served" suspension and a written warning as a disciplinary measure for his absences.

From January 4, 2000 to April 20, 2000, Barclay had 28 unexcused work absences. The record shows two medical evaluations of Barclay during that time period: on February 21, 2000, Barclay had a medical examination during which it was determined that he was "medically acceptable" for his position as an engineer, and on March 27, 2000, Barclay's personal physician at the time wrote a letter to Amtrak stating that (1) Barclay's IBS was well controlled, (2) his taking a 20 mg dose of Bentyl in the evening

---

[1]Barclay sometimes experienced light-headedness and drowsiness while on the drug.

would not interfere with his operation of a locomotive, and (3) he was "unrestricted as a locomotive engineer." Supplemental Appendix at 33. After reviewing the medical documentation, Amtrak began disciplinary proceedings against Barclay for his absenteeism.

After rescheduling the disciplinary hearing three times due to Barclay's repeated failures to appear, the proceeding was held in absentia, with a representative from Barclay's union representing his interests. On July 25, 2000, the Amtrak hearing officer issued a decision immediately terminating Barclay's employment for excessive absenteeism. The union appealed the decision to the National Mediation Board. On February 21, 2001, the Board affirmed Barclay's dismissal but ruled that he should be given one final chance to work. Barclay felt incapable of performing the job due to disability and did not return to work. Accordingly, the last day that Barclay worked for Amtrak was May 21, 2000.

On April 24, 2003, Barclay filed a complaint in the Eastern District of Pennsylvania, which the District Court construed as alleging violations of the Americans with Disabilities Act (ADA), the Rehabilitation Act, the Pennsylvania Human Relations Act (PHRA), and state law defamation and invasion of privacy claims. The District Court granted Amtrak's motion to dismiss as to all claims other than the ADA claims on the basis of timeliness.[2] Barclay raises three claims under the ADA: (1) that he was

---

[2]Neither party contests this decision on appeal.

wrongfully terminated on the basis of his disability, (2) that Amtrak failed to reasonably accommodate his disability, and (3) that he was subjected to a hostile work environment on the basis of his disability.

The parties engaged in discovery and Amtrak filed a motion for summary judgment. The District Court granted the motion and Barclay now appeals.

II.

We have jurisdiction under 28 U.S.C. § 1291, and exercise plenary review over the decision to grant summary judgment. See Torres v. Fauver, 292 F.3d 141, 145 (3d Cir. 2002). We must determine whether the record, when viewed in the light most favorable to Barclay, shows that there is no genuine issue of material fact and that Amtrak was entitled to judgment as a matter of law. See id.; Fed. R. Civ. P. 56.

We first address Barclay's termination claim. In order to establish a *prima facie* case of disability discrimination within the meaning of the ADA, an employee must demonstrate that he or she, (1) has a disability, (2) is otherwise qualified to perform the essential functions of the job, with or without accommodations by the employer, and (3) has suffered an adverse employment action because of his or her disability. See Williams v. Philadelphia Housing Auth. Police Dep't, 380 F.3d 751, 761 (3d Cir. 2004). If the employee makes out a *prima facie* case of discrimination, the employer may prevail by demonstrating a legitimate, non-discriminatory reason for the adverse action. See Salley v. Circuit City Stores, Inc., 160 F.3d 977, 981 (3d Cir. 1998).

4

In granting the defendants' motion for summary judgment, the District Court appeared to agree with Amtrak that the evidence indicates that Barclay was not qualified to perform his job at the time of his termination; the District Court also concluded that Amtrak terminated Barclay for a legitimate nondiscriminatory reason. Because the District Court's second conclusion is sufficient to support summary judgment in favor of Amtrak on this claim, we need not reach the question of Barclay's qualifications at the time of his termination.

We agree with the District Court. The record is clear that Barclay was disciplined regarding his absenteeism and given a written warning. Shortly afterward, he had 28 unexcused absences in a four-and-a-half-month period. Amtrak's decision to terminate him for excessive absenteeism was upheld by the National Mediation Board. Though Barclay claims that the unexcused absences occurred as a result of his disability and were medically justified, there is no evidence in the record of medical excuses for the absences during this time period, much less that Barclay presented any excuses to Amtrak. In fact, Amtrak's medical department relied upon two medical evaluations, both of which occurred within the relevant time period, in concluding that Barclay's absences were not medically justified. Amtrak did not begin disciplinary proceedings against Barclay until it determined that his absences were not medically justified. Because Barclay fails to present any evidence from which a fact finder could reasonably conclude that the stated reasons for his firing are pretextual, the District Court properly granted summary

judgment in favor of Amtrak. See Shaner v. Synthes, 204 F.3d 494, 501 (3d Cir. 2000).

With regard to Barclay's second claim (reasonable accommodation), for the reasons explained by the District Court, we agree that Barclay has failed to present evidence of vacant, funded positions, at or below the level of his engineer position, the essential functions of which he was capable of performing, as required in order to make out a *prima facie* case of Amtrak's failure to reasonably accommodate his disability. See Donahue v. Consolidated Rail Corp., 224 F.3d 226, 230 (3d Cir. 2000).

Finally, assuming that such claims are cognizable under the ADA, we turn to Barclay's hostile work environment/harassment claims. Among the elements that Barclay must prove in order to make out a hostile work environment claim is that the harassment to which he was subjected was based on his disability or a request for an accommodation. See Walton v. Mental Health Ass'n. of Southeastern Pennsylvania, 168 F.3d 661, 667 (3d. Cir. 1999). As the District Court emphasized, the ADA does not protect an employee from every kind of harassment, only harassment that is based upon the employee's disability. See id. (the fact that supervisor's behavior toward the disabled plaintiff was offensive does not indicate that it was based on plaintiff's disability).

Barclay alleges several grounds for his harassment claim, the most potentially problematic of which are related to the behavior of his supervisor, division road foreman Carmine Palumbo. Barclay alleges, *inter alia*, that Palumbo wanted Barclay to regularly obtain his permission before marking off sick, that he put Barclay on speakerphone and

6

allowed other employees to listen when Barclay called in sick, and that he "openly disclosed" personal medical facts (not about Barclay's disability) that Barclay had told him privately. Barclay also presented evidence that Palumbo tried to convince another employee to regularly check Barclay's books and make sure that he was fit for duty because Palumbo thought Barclay was a "drunken bum," and he wanted Barclay fired. The District Court rightly characterized Palumbo's behavior as ranging from insensitive to obnoxious.

However, as Barclay himself states, he understood his supervisor's actions to be a "person[a]l grudge." The record is devoid of any accusation that this grudge was due to, or even related to, Barclay's IBS. Indeed, as the District Court noted, Barclay could not recall at deposition any statements by his supervisors indicating discrimination on the basis of his disability. It appears from the record that the most significant motivating factor for the unfortunate treatment Barclay received was his absenteeism. We note that Barclay did not present evidence that the excessive absences for which he was fired were due to a disability. However, even if the absences were due to Barclay's IBS, we have rejected a theory of harassment so broad as to dictate that any time a supervisor harasses an employee for absences the employee claims are due to a disability, that harassment is *based* on the employee's disability under the ADA. See id. at 664, 667. Because we conclude that Barclay fails to show that any harassment was due to his disability as required by the ADA, we need not reach the District Court's conclusion that Barclay fails

7

to show the type of pervasive, severe conduct required.

Therefore, we will affirm the judgment of the District Court.