**Tess ENDRES, Plaintiff**

v.

**TECHNEGLAS, INC., Defendant**

No. 3:99CV0526.

United States District Court,
M.D. Pennsylvania.

March 29, 2001.

Kimberly D. Borland, Borland & Borland, Wilkes-Barre, PA, David P. Tomaszewski, Wilkes Barre, PA, for plaintiff.

Robert M. Goldich, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, PA, Alexia Kita Blake, Hourigan Kluger Spohrer & Quinn, PC, Scranton, PA, for defendant.

## *MEMORANDUM*

MUNLEY, District Judge.

Before the court for disposition is the defendant's motion for summary judgment. The plaintiff is Tess Endres, and the defendant is Techneglas, Inc. The matter is ripe for disposition having been fully briefed and argued. For the reasons that follow, the motion will be granted in part and denied in part.

### Background

Plaintiff was employed by Defendant Techneglas, Inc. from approximately 1986 until she was discharged on January 4, 1996. During her tenure at Techneglas, plaintiff held various positions and was a member of Glass Molders, Pottery and Allied Worker's International Union, Local 243. Plaintiff assumed the position of shipping coordinator in the defendant's warehouse in February of 1994. As a shipping coordinator, plaintiff worked on third shift with a fork-lift driver, Robert Serovinski. The bulk of plaintiff's complaint involves alleged harassing behavior by Serovinski. However, for a complete background we must first discuss a complaint made by Dolores Wychoskie.

In August or September 1994, Wychoskie worked with Serovinski and the plaintiff. In September 1994, Serovinski told Wychoskie that he had heard plaintiff make a threat of physical violence against her. Plaintiff denies ever having made the threat. Nonetheless, Wychoskie filed a complaint with Techneglas' human resources department complaining about the alleged threat, among other matters. During Techneglas' investigation of the complaint, the plaintiff denied making the threat. Plaintiff ultimately received no discipline due to the alleged threat.

On October 4, 1994, plaintiff presented two written complaints to the Techneglas human resources department, one concerning Serovinski and one relating to Wychoskie. She filed the complaint against Wychoskie for filing the charges and complaint against her. She alleged that in so doing, Wychoskie slandered her name and reputation. Further she averred that Wychoskie caused a disruptive and hostile work environment. She said the incidents caused her undue stress and pressure that affected her job performance.

The complaint against Serovinski included what the plaintiff termed "harassment" and included the following alleged incidents: Serovinski relating false accusations involved with the Wychoskie complaint; Serovinski revving his engine, and

slamming the metal forks of his fork-lift on the ground in an intimidating manner when he came into work in a bad mood; not loading trucks until he felt like it; loading trucks without telling her which one he was loading and thus, not providing her an opportunity to perform her functions; conflict and problems between Serovinski and trailer drivers; Serovinski destroying instructional notes plaintiff left him; Serovinski once asked where another worker was and said, "[l]et me tell you, she fucked with the wrong person when she fucked with me! When I get through with her, Mary Reynolds, Bob Reynolds and Jesus Christ himself won't be able to save her"; when plaintiff and Serovinski would spot Sandra Ball on the way from work he would get outraged, pound his fist into his hand and say, "I hate that maggot. I should have killed her when I had the chance." Plaintiff's Deposition Exhibit (hereinafter "Pl. Dep. Ex.") 19. She claimed that these incidents created a hostile work environment for her, that she no longer looked forward to coming to work, was constantly sick to her stomach and suffered headaches.

On October 5, 1994, various Techneglas officials, a union representative and plaintiff met to discuss the allegations against Serovinski. On October 7, 1994, Techneglas spoke with Serovinski. It is disputed whether they asked him about Endres' complaint at this meeting. During the meeting, the union president indicated that Serovinski was a conscientious worker. During the course of its investigation, Techneglas discovered that many fork-lift drivers operate their fork-lifts in a quick manner, slam the forks as a natural part of operating the forklift and rev the engine in order to lift a load. Margaret B. Guffrovich, the defendant's human resources supervisor requested that warehouse supervision be more observant of Serovinski's driving and discipline him if they observed any unsafe behavior.

At a wrap-up meeting regarding plaintiff's complaint on October 13, 1994, Guffrovich discussed with the plaintiff the company's conclusions. The company had found that the situation between plaintiff and Serovinski did not constitute harassment and was the result of a personality conflict exacerbated by Wychoskie's complaint against Endres.

Subsequently, plaintiff and another employee of Techneglas, Tina Farrey, objected regarding Serovinski's stacking objects too high for them to reach. In confronting Serovinski about the situation, he yelled and used the word "fuck." Guffrovich advised Serovinski on the proper manner to stack the objects.

On October 25, 1994, plaintiff filed a grievance against Serovinski stating that he harassed and intimidated her and had been uncooperative in work situations for several weeks. Pl. Dep. Ex. 21. The union suggested as a remedy that the company post a bid for a steady third shift forklift driver to work the dock along with plaintiff. Defendant subsequently added a second fork-lift driver to work with Serovinski and plaintiff, in order to ensure that plaintiff would not have to work alone with Serovinski from Monday through Thursday. She would apparently still have to work with him alone on Sundays.

In November of 1994, plaintiff took a leave of absence due to the anxiety, stress and depression caused by working with Serovinski. In early January of 1995, she returned to work and continued to suffer from Serovinski's behavior, including failure to cooperate with her. She complained in writing to her supervisor on January 12, 1995. In early February 1995, plaintiff wrote a note to a shop steward that Nick Gulick had tried to hit her with a forklift and that Serovinski had sped toward her in his fork-lift, barely missing

her, and slammed down his forks while laughing.

Plaintiff once again went on sick leave on February 8, 1995. She remained on sick leave until January 4, 1996, when defendant terminated her employment. The reason given for the discharge was plaintiff's refusal to bid for jobs under the collective bargaining agreement. Plaintiff filed a grievance regarding the discharge, and it was sustained by an arbitrator in March of 1997. He ordered that the plaintiff be re-instated at Techneglas. The reason for the arbitrator's decision was that the decision to terminate plaintiff was not supported by "just cause." She had never been told that failure to bid for jobs would be grounds for dismissal.

Also in March 1997, the plaintiff's physician cleared her for return to work. Defendant told plaintiff the date on which to return. However, plaintiff indicated she would not be returning as the conditions that forced her to leave were not corrected. Defendant construed plaintiff's remarks as a resignation and informed the plaintiff accordingly. The current lawsuit followed, wherein the plaintiff alleges various types of employment discrimination.

Plaintiff's complaint raises seven causes of action based on Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–2(a), (hereinafter "Title VII" or "Civil Rights Act"); the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (hereinafter "ADA"); and the Pennsylvania Human Relations Act (hereinafter "PHRA"), 43 P.S. § 955(a). The causes of action involve claims of sex discrimination, sexual harassment/hostile work environment, disability discrimination and retaliation.

At the close of discovery, the defendant moved for summary judgment bringing the case to its present posture.

**Standard of review**

The granting of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law". *See Knabe v. Boury,* 114 F.3d 407, 410 n. 4 (3d Cir.1997) (citing Fed.R.Civ.P. 56(c)). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. *International Raw Materials, Ltd. v. Stauffer Chemical Co.,* 898 F.2d 946, 949 (3d Cir.1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material when it might affect the outcome of the suit under the governing law. *Id.* Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers

to interrogatories showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548.

In analyzing summary judgment motions in cases involving discrimination, a burden-shifting analysis is utilized which was set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The purpose of the burden-shifting review is to determine whether the plaintiff has indeed established a *prima facie* case. *Geraci v. Moody–Tottrup, Internat'l Inc.*, 82 F.3d 578, 580 (3rd Cir. 1996). First, the plaintiff must establish unlawful discrimination. The burden then shifts to the employer to proffer a legitimate, nondiscriminatory reason for terminating her. Once the employer has offered a legitimate reason, the burden shifts back to the plaintiff to demonstrate that the proffered reason was merely pretextual. *Id.* (citing *McDonnell Douglas, supra* and *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 252–56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

## I. Sexual discrimination/hostile work environment

Defendant initially contends that the plaintiff's claim for sexual discrimination/hostile work environment should be dismissed as plaintiff cannot meet any of the elements of a *prima facie* case of such discrimination. Plaintiff avers that all the *prima facie* elements are met. After a careful review, and viewing the record in the light most favorable to the non-moving party, we find that granting summary judgment would be inappropriate with regard to the sexual discrimination/hostile work environment claim.

Pursuant to the terms of Title VII, it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).[1] A plaintiff may have a cognizable cause of action if she demonstrates that gender-based discrimination created a hostile or abusive working environment. *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 66, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). The Third Circuit Court of Appeals has held as follows:

> To bring an actionable claim for sexual harassment because of an intimidating and offensive work environment, a plaintiff must establish by the totality of the circumstances, the existence of a hostile or abusive working *environment* which is severe enough to affect the psychological stability of a minority employee. We hold that five constituents must converge to bring a successful claim for a sexually hostile work environment under Title VII:(1) the employees suffered intentional discrimination because of their sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of respondeat superior liability (internal quotation, citations and footnote omitted; emphasis in the original).

*Andrews v. City of Philadelphia*, 895 F.2d 1469, 1482 (3d Cir.1990).

Defendant claims that none of these elements are present in the instant case. We

---

1. Claims made under the PHRA and claims brought under Title VII are analyzed in an identical manner. *Salley v. Circuit City Stores, Inc.*, 160 F.3d 977 (3rd Cir.1998). Therefore, for the remainder of the opinion, the PHRA will not be mentioned, but the issues involving the PHRA will be decided in the same manner as the Title VII issues.

will therefore address each element *seriatim*.

### A. Did the plaintiff suffer intentional discrimination because of her sex?

█ Defendant first claims that it cannot be established in the instant case that the offensive conduct was motivated by gender. Therefore, sexual harassment cannot be shown. Defendant contends that the Serovinski's behavior toward the plaintiff is characteristic of his personality and is no different from how he responds to other employees, both male and female alike. In addition other female employees who worked with him indicated that they had no problem with Serovinski. Moreover, some males who worked with Serovinski, indicated that he was non-communicative with them also. Some of Serovinski's behavior that plaintiff complains of such as driving his fork-lift quickly and slamming the metal forks onto the concrete floor are common occurrences with all forklift drivers. Thus, defendant claims that the record does not support the plaintiff's claim of sexual harassment. We find defendant's argument lacks merit.

Prior to plaintiff holding the job of shipper, Sandra Ball held the position. Serovinski made the following statement to the plaintiff regarding Ball, "I hate that maggot. I should have killed her when I had the chance." Guffrovich Dep. Exhibit 1. Ball had complained that Serovinski was miserable. Guffrovich Dep. at 58. Plaintiff claims that Ball told her that Serovinski would drive the forklift at a high rate of speed, slam the forks, throw cigarette butts at her, and would come very close to hitting her with the fork lift while they were "live loading" in a trailer. Endres Dep. at 134. After Ball worked with Serovinski, Judy Dongosky worked with him.

*Id.* She also said Serovinski was moody, uncommunicative and drove unsafely. Guffrovich Dep. at 58–59.

The plaintiff has presented evidence that Maureen McGlynn, Serovinski's supervisor, informed Margaret Guffrovich of the defendant's human relations department that the women on Mr. Serovinski's shift had difficulty with him and that his biggest problem seemed to be working with women. Guffrovich Dep. Exhibit 10; Guffrovich Dep. 69–70. Moreover, Serovinski had indicated that women do not belong in the area in which he worked, and that he would rather work with males. Guffrovich Dep. Exhibit 11; Guffrovich Dep. at 88.

From his statements and the history of the women who worked with him, the jury may make the inference that Serovinski harassed plaintiff simply because she was a woman. Plaintiff also raises similar allegations against Nick Gulick, a male temporary overtime drive at Techneglas who worked in the same shift and location as plaintiff during November 1994, and January through February 1995. No evidence has been presented, however, to indicate that Gulick's behavior toward the plaintiff was based on her gender.[2] Accordingly, the allegations regarding Serovinski shall remain in the case as evidence of sexual harassment hostile work environment, but the allegations regarding Gulick do not support such a claim.

In addition, we cannot grant the defendant's motion for summary judgment because it has presented evidence that such matters as slamming the forks and driving the forklifts at a high rate of speed were typical at the warehouse. Its argument is that because these matters were typical, it was not harassment when Serovinski did it in plaintiff's presence. We find that the

---

**2.** Gulick allegedly used foul language around the plaintiff, said of her "It's only a matter of time before she goes," and drove his fork-lift at her.

issue of whether Serovinski's slamming of the forks and driving at a high rate of speed in plaintiff's situation was done with the intention to harass is a jury question.

### B. Was the discrimination pervasive and regular?

■ Next, the defendant claims that the sexual harassment portion of the complaint should be dismissed because the discrimination was not pervasive and regular. We disagree.

In order to be actionable, the discriminatory conduct must be pervasive and regular. Harassment is pervasive where incidents of harassment occur with regularity. *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1484 (3d Cir.1990). In the instant case, we find that the plaintiff has provided sufficient proof, that if believed, will establish that the harassment was pervasive and regular. The plaintiff commenced complaining regarding the behavior in October of 1994. The behavior occurred continuously, that is every night, according to the plaintiff's deposition. Pl. Dep. at 161. She continued to complain about it and finally in November took a sick leave due to stress, headaches and diarrhea that she attributed to the harassment. Guffrovich Dep. at 113–14. In January, she returned to work, but on her fifth day back complained of three more situations that she claimed were harassment. *Id.* at 124; Guffrovich Dep. Ex. 19. One specific occurrence that she complained of was Serovinski speeding up behind her in his forklift slamming his forks, stopping less than a foot behind her and laughing continuously as he sat there. Guffrovich Dep. at 129; Guffrovich Dep. Ex. 20. In February of 1995, plaintiff took another leave.

Defendant claims that it is relevant that the conduct that is complained of only occurred, at most, in a two month period.

We find no merit to this contention. The fact that it occurred only for two months may actually go to prove how severe and pervasive it was. It only took that long for the plaintiff to become ill and leave her job.

In addition the defendant claims that the conduct complained of does not rise to the level of a Title VII violation. We disagree. The jury may believe that plaintiff was singled out to be harassed in order to get her to leave her job. The harassment was so severe that the plaintiff became physically ill from it, and had to take a two month leave of absence, before finally taking another longer leave. Eventually, her employment with the defendant ended.

### C. Did the discrimination detrimentally affect the plaintiff?

■ Defendant claims the actions of the Serovinski, at most, made the plaintiff's work environment uncomfortable, and therefore, did not "detrimentally affect" her. We must disagree. As set forth above, the plaintiff claims that the harassment caused physical symptoms and caused her to take several leaves of absence. She was afraid to go to work.

### D. Would the discrimination have detrimentally affected a reasonable person of the same sex in that position?

■ Defendant next claims that a reasonable woman in the plaintiff's position would not have been detrimentally affected by the complained of actions. To support its position, the defendant claims that other women who worked with Serovinski were not as adversely affected as she was.[3] We are in disagreement with the defendant. Plaintiff claims that other women

---

**3.** Notably, as set forth above, two other women, Ball and Dongosky, who worked with Serovinski as a shipper had similar problems with him.

were not treated to the same conduct as the plaintiff was. In plaintiff's position as a shipper, she had to work with Serovinski closely. We find that if the jury finds that the plaintiff suffered from the conduct set forth in sections a and b above, they could very well conclude that a reasonable person in the plaintiff's position would find the work environment hostile and abusive.

### E. Has plaintiff established a basis for imputing liability to Techneglas?

■■■ Defendant next claims that plaintiff cannot demonstrate the final prong of her *prima facie* case of sexual harassment because once Techneglas received notice of the complaints against Serovinski, it commenced an immediate and thorough investigation and implemented remedial action which was reasonably calculated to prevent further harassment. Under the law, an employer who knew or should have known of harassment and failed to take prompt remedial action is liable under Title VII. *Andrews*, 895 F.2d at 1486. Remedial action can insulate a defendant from liability, however, only if they were reasonably calculated to prevent further harassment. *Knabe v. Boury Corp.*, 114 F.3d 407, 412 n. 8 (3d Cir.1997). Defendant describes its remedial actions as follows:

> Upon receipt of Plaintiff's complaints, Techneglas immediately commenced an investigation and interviewed numerous employees. During the course of its investigation, Techneglas orally counseled Serovinski about his language; requested warehouse supervision to be more observant of Serovinski's driving and his co-workers' perception of his driving and his personality; requested the warehouse forepersons to spend extra time in the area where Plaintiff and Serovinski worked and to report any complaints about Serovinski; instructed Serovinski to communicate with Plaintiff; and added a second forklift driver to work on the shift so that Plaintiff

would not have to work alone with Serovinski.

Defendant's Memorandum in Support of Its Motion for Summary Judgment at 14–15.

We find a material question of fact exists. Serovinski denies ever being counseled or disciplined regarding any of the complaints. Serovinski Dep. at 31, 33–34. Questions exist regarding the extent of the defendant's investigation into the complaints. For example, when plaintiff complained that Serovinski was driving his forklift in a physically intimidating manner, the sole investigation was to speak to Serovinski who denied doing it. Guffrovich Dep. at 137–38. Further, Serovinski received no discipline, Guffrovich Dep. at 186, and little or no counseling, despite defendant's claim to the contrary, Guffrovich Dep. at 186.

Accordingly, we cannot find as a matter of law that Techneglas took prompt remedial action in order to stop future harassment. Therefore, we find that the plaintiff has met her burden of establishing a sexually hostile work environment and summary judgment against her would be inappropriate.

## II. Sexual Discrimination/Disparate Treatment

■■■ Counts I and V of the plaintiff's complaint also contain allegations that defendant terminated plaintiff's employment because of her gender. As set forth above, in a Title VII discrimination case, to overcome a summary judgment motion, the plaintiff must first establish a *prima facie* case.

In a Title VII sex discrimination case, a *prima facie* case is established where plaintiff demonstrates (1) that she is a member of a protected class, (2) she was qualified for the position, (3) she was discharged, and (4) the position was ultimate-

ly filled by a person not of the protected class. *Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061, 1066 n. 5 (3d Cir.1996).

In the instant case, the defendant concedes that the plaintiff has established the first three elements of the *prima facie* case. Techneglas disputes that the fourth element has been established as the record is devoid of any indication that it treated men more favorably than the Plaintiff in its decision to terminate her. Plaintiff's position is that the male employees were treated more favorably than she was because they were never disciplined or counseled regarding their actions—actions that were so bad that plaintiff had to take leave of her job. Further, while out on sick leave, Plaintiff bid for a store room attendant's job in November of 1995. She was terminated on January 4, 1996 and the store room attendant position was filled by a male four days later. If plaintiff had not been terminated, the job would have been awarded to her.

We find that the plaintiff has not established the fourth element of her *prima facie* case. The first evidence that she presents regarding whether the men were disciplined relates more to the sexual harassment hostile work environment claim. That is a distinct cause of action and is separate from sexual discrimination under Title VII.

The plaintiff's second contention is more of a close call. Apparently, the defendant does not contest the fact that plaintiff would have received the storeroom job if she had not been fired four days previously. Guffrovich Dep. at 158. As of January 4, 1996, an employee identified as "Mr. Conklin" was released to be able to take the storeroom job, and that was the same day that plaintiff got terminated. *Id.* at 160. A jury could conclude that her termination was made in order that Mr. Conk-

lin, apparently a male, could take the position.

■ Accordingly, we find that plaintiff has met her *prima facie* case. However, that does not end the analysis. As set forth above, in the context of a summary judgment motion, once the plaintiff has established a *prima facie* case, the defendant must present legitimate non-discriminatory reasons for its actions. If it does, the burden shifts to the plaintiff to provide proof that the non-discriminatory reason is merely pretext.

In the instant case, the defendant claims that it has presented a legitimate non-discriminatory reason for terminating the plaintiff, and the plaintiff has not established that it was merely pretext. The defendant's non-discriminatory reason for terminating plaintiff is: plaintiff failed to bid for jobs or accept a job under Article IX, Section VII of the collective bargaining agreement for which she was qualified, had sufficient seniority, and satisfied her stated conditions for return from medical leave of absence. This reason was provided to the plaintiff in the termination letter dated January 4, 1996. It is plaintiff's burden to establish that the reason was just pretext for unlawful discrimination.

We must determine whether the plaintiff has cast sufficient doubt upon the employer's proffered reasons to permit a reasonable fact finder to conclude that the reasons are incredible. *Sheridan v. E.I. DuPont de Nemours*, 100 F.3d 1061, 1072 (3d Cir.1996). The plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find the reasons unworthy of credence. *Id.*

In support of its position that the defendant's reason was merely pretextual the plaintiff points out that the matter was

arbitrated and the arbitrator found that the discharge was not supported by just cause. Just cause was not present because the plaintiff had never been told that failure to bid on a position would lead to her employment being terminated.

Merely because the employer's reason was not proper pursuant to the collective bargaining agreement, however, does not mean it was not the real reason the plaintiff was fired. Plaintiff has thus presented no evidence of weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its action from which a fact finder could rationally find the reason unworthy of credence. Thus, summary judgment shall be entered in favor of defendant and against the plaintiff with regard to her claim of sex discrimination/disparate treatment.

## III. Disability Discrimination under the ADA and the PHRA

As noted above, the plaintiff also brings a claim for Disability Discrimination under the PHRA, Count VII for violation of the Americans With Disabilities Act (ADA) 42 U.S.C.A. § 12101 *et seq.*[4], Count III. The purpose of this enactment is to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities...." 42 U.S.C.A. § 12101(b)(1).

Pursuant to the ADA, an employer cannot engage in employment discrimination against a qualified individual with a disability because of her disability. 42 U.S.C.A. § 12112(a). Further, an employer must make reasonable accommodations to known physical or mental limitations of an otherwise qualified employee with a

disability unless such employer can demonstrate the accommodation would impose an undue hardship on the operation of the employer's business. *Id.*

Under the law, the plaintiff has the initial burden in an ADA case of establishing a *prima facie* case. *Olson v. General Elec. Astrospace,* 101 F.3d 947, 951 (3d Cir. 1996); *Newman v. GHS Osteopathic, Inc.,* 60 F.3d 153, 157 (3d Cir.1995). A *prima facie* case is established by the plaintiff when she demonstrates: 1) she is a disabled person within the meaning of the ADA; 2) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and 3) she has suffered an otherwise adverse employment decision as a result of discrimination. *Shiring v. Runyon,* 90 F.3d 827, 831 (3d Cir.1996); *Gaul v. Lucent Technologies,* 134 F.3d 576, 580 (3d Cir.1998).

■ At issue in the instant case is whether the plaintiff suffered a disability under the ADA. An individual is disabled under the ADA if she suffers a physical or mental impairment that substantially limits one or more of her major life activities. 42 U.S.C.A. § 12102(2); *Kelly v. Drexel Univ.,* 94 F.3d 102, 105 (3d Cir.1996).

Plaintiff maintains that she can be deemed disabled under the ADA because she is substantially limited in a major life activity. "Major life activities" include such matters as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, working, sitting, standing, lifting, and reaching. 29 C.F.R. 1630.2(i); *Kralik v. Durbin,* 130 F.3d 76, 78–79 (3d Cir.1997).

---

4. Plaintiff also brings a claim for disability discrimination under the Pennsylvania Human Relations Act. We will treat plaintiff's PHRA claims as coextensive with her ADA claims as its definition of "handicap or dis- ability" is substantially similar to the definition of "disability" under the ADA, and courts generally interpret the PHRA in accord with its federal counterparts. *Kelly v. Drexel University,* 94 F.3d 102, 105 (3d Cir.1996).

A major life activity is "substantially limited" where one is:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1); *Olson*, 101 F.3d at 952.

■■■■ Moreover, "[i]n determining if a person is affected by a disability that 'substantially limits' a 'major life activity' [the court] must consider several factors including: (i) The nature and severity of the impairment; and (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." *Olson*, 101 F.3d at 952; 29 C.F.R. § 1630.2(j)(2). Additionally, a plaintiff may be "disabled" pursuant to the ADA if the employer treats her as if she is substantially limited in a life activity. 29 C.F.R. § 1630(*l*)(1). We shall address these issues separately.

### a. Is the plaintiff substantially limited in a major life activity?

It is the plaintiff's burden to establish that she is disabled within the definitions set forth above. Plaintiff alleges that she suffers from an anxiety disorder and depression that substantially limit the major life activities of working, engaging in recreational activities, performing household tasks and social interaction. Initially we will address the major life activity of working.

The Code of Federal Regulations provides as follows:

With respect to the major life activity of working—(i) The term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(i).

In the instant case, plaintiff's work was limited, but merely to the extent that she could not work with Serovinski. There was no restriction that she could not perform a class of jobs or a broad range of jobs in various classes as compared to the average person. Consequently, we find that the restriction she did have does not fall within the meaning of substantially limiting a major life activity.

Plaintiff also claims that she had a difficult time coaching, leaving home, shopping, and was extremely nervous whenever she left home or the doorbell rang for fear it would be Serovinski. While she may have had a difficult time performing these functions, she has not presented evidence that she was "significantly restricted" in doing them. We cannot find that this establishes a substantial limitation to any major life activity.

### b. Did Techneglas perceive Endres as disabled?

■■■■ Even though plaintiff does not have a disability under the law because her condition does not amount to an impairment of a major life activity, she can still be deemed disabled if Defendant Techneglas treated her impairment as constituting a limit of a major life activity. *Kelly*, 94 F.3d at 108 (citing 29 C.F.R. § 1630.2(*l*)(1)). In this section of the analysis we focus our attention on how the

employer perceived the plaintiff, not on the plaintiff's actual condition. Plaintiff claims that because the defendant received reports from doctors regarding her condition and because they never disputed her request for disability leave, that the record is clear that defendant perceived her as disabled. We disagree.

Regulations of the Equal Employment Opportunity Commission provide that an individual is regarded as being disabled if he or she:

(1) [h]as a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;

(2) [h]as a physical or mental impairment that substantially limits major life activities only as a result of the attitude of others toward such impairment; or

(3) [h]as none of the impairments ... but is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. § 1630.2(*l*); *Deane v. Pocono Medical Center*, 142 F.3d 138, 143 (3d Cir.1998).

The mere fact that an employer is aware of an employee's impairment is insufficient to establish that the employee was regarded as disabled or that such perception caused the adverse employment action. *Kelly*, 94 F.3d at 109. It appears that during her leaves of absence the defendant took steps to have her return to the workplace. In June of 1995, for instance, plaintiff attended a meeting with her attorney and union representatives where Defendant offered her the option of changing her work shift from Sunday through Thursday to Monday through Friday in order for her to return to work. Endres Dep. at 102–03.

In addition, it appears that plaintiff's doctors indicated that she could return to work in the end of March 1997. Pl. Dep.

Ex. 4–5. The defendant told her to report to work on March 31, 1997. Pl. Dep. Ex. 3. However, the plaintiff replied that "[T]he conditions which forced me to leave work have not been corrected. Therefore, I decline to be reinstated." Pl. Dep. Ex. 6. The offer of work from Techneglas indicates that it did not perceive plaintiff to be disabled. Plaintiff has produced no other evidence to the contrary, and therefore, we find no material issues of fact are in question. Accordingly, summary judgment will be granted to Techneglas on Counts III and VII of the plaintiff's complaint regarding violation of the ADA and the PHRA respectively.

## IV. Retaliation

Lastly, the plaintiff raises claims of retaliatory discharge under the ADA and PHRA. Counts II, IV, VI, VIII of the Complaint.

In order to sustain an action for retaliation, the plaintiff must demonstrate that 1) the employee engaged in a protected employee activity; 2) the employer took an adverse employment action at the same time or after the employee's protected activity; 3) a causal link exists between the employee's protected activity and the employer's action. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 (3d Cir.2000).

In the instant case, the issue is whether the plaintiff has established a causal link between the protected activity and the employer's action. Plaintiff alleges that she made a sexual harassment complaint to the company in October 1994, and administrative complaints with the PHRC and the EEOC on February 13, 1995 and March 22, 1995. She was terminated slightly over nine months later in January of 1996. Plaintiff concludes that "the temporal proximity between her protected activity and adverse action is approximately nine months." Plaintiff's

Memorandum of Law in Opposition to the Motion for Summary Judgment, pg. 14. However, within that nine month period the defendant offered plaintiff a variety jobs she found "unacceptable." When she failed to take any of them, she was discharged. It is the defendant's position that it was the plaintiff's failure to take any of the jobs that caused them to terminate her employment. After a review of the facts, we find that the plaintiff has not established any kind of causal link between the protected activity and the termination.

Temporal proximity between the protected activity and the adverse employment action can be sufficient to establish the causal link. *Farrell,* 206 F.3d at 279; *Jalil v. Avdel Corp.,* 873 F.2d 701, 708 (3d Cir.1989) (two days can establish a causal link). However, temporal proximity alone is insufficient to establish the necessary causal connection when the temporal relationship is not "unusually suggestive." *Krouse v. American Sterilizer Co.,* 126 F.3d 494, 503 (3d Cir.1997). The *Krouse* court found that nineteen months was too attenuated to create a genuine issue of fact. *Id.* Likewise, in the instant case, we find that the nine month delay coupled with the complete lack of any other indicia of retaliation is too attenuated for a jury to conclude that retaliation was the cause of the adverse employment decision. Accordingly, summary judgment will be granted to the defendant on the plaintiff's claims for retaliation.

**Conclusion**

After a careful review of Defendant Techneglas' motion for summary judgment, it will be denied in part and granted in part. It will be denied with respect to the charges of a sexually hostile work environment as plaintiff has met her *prima facie* case. A jury may find that Serovinski harassed her because she was a woman and the company did not take adequate remedial measures. Summary judgment shall be granted to the defendant and against the plaintiff on the remainder of the claims: sex discrimination/disparate treatment, disability discrimination/ADA violation, and retaliation. An appropriate order follows.

***ORDER***

AND NOW, to wit, this 29th day of March 2001, the defendant's motion for summary judgment [29–1] is GRANTED with respect to the sex discrimination/disparate treatment, disability discrimination claims and retaliation claims and DENIED with respect to sex discrimination/hostile work environment claim.