**Charles WELLNER, Plaintiff,**

v.

**TOWN OF WESTPORT and Town of Westport Police Department, Defendants.**

**No. 3:99 CV 2070 GLG.**

United States District Court, D. Connecticut.

Aug. 8, 2001.

Thomas W. Bucci, Willinger, Shepro, Tower & Bucci, Bridgeport, CT, for Plaintiff.

Stephen P. Fogerty, Halloran & Sage, Westport, CT, for Defendants.

*MEMORANDUM DECISION*

GOETTEL, District Judge.

Plaintiff moves to reargue this Court's granting of summary judgment to the defendant. The defendant filed its motion for summary judgment in late April of this year. When no opposition had been received by July 6, 2001, the motion was granted in the absence of opposition. Plaintiff's counsel states that he had not opposed that motion because he had misdiaried the return date. A mistake in diarying might account for a one month mistake but more than two months passed here. However, since defense counsel has graciously agreed not to oppose the request for re-argument and to allow the

motion to be considered on the merits, we will proceed to consider the original motion with the now submitted opposition.

## BACKGROUND

The following facts are not in dispute:

1. The plaintiff was born on December 14, 1942 in Bridgeport, Connecticut.

2. The plaintiff was employed by the City of Norwalk Police Department as a police officer from Jul. 22, 1976 until Jan. 6, 1993.

3. The plaintiff resigned from employment with the City of Norwalk Police Department on Jan. 6, 1993.

4. During his employment with the Norwalk Police Department, the plaintiff sustained a back injury. He was ascribed a 21% permanent partial disability by Dr. Polifroni, his treating orthopedist.

5. The plaintiff was hired as a Traffic Agent by the Town of Westport Police Department in 1996.

6. On or about February of 1998, the plaintiff applied for the position of Special Police Officer with the Town of Westport Police Department.

7. The Town of Westport Police Department employs Traffic Agents, Special Police Officers, and Police Officers. Generally, the employment track follows the course of Traffic Agent to Special Police Officer to Police Officer. An applicant must work for at least a year as a "traffic agent" before applying for a position as a Special Police Officer. (Special Police Officers work only part-time taking overtime jobs that regular police officers reject.) Regular police officers are hired only from the ranks of Special Police Officers.

8. Plaintiff was extended a conditional offer subject to a polygraph test, a psychological examination, and a background check.

9. Detective Batten conducted the background check of the plaintiff.

10. That background investigation revealed several alleged incidents which Chief Chiarenzelli, chief of the Westport Police Department, states that he found disturbing, including plaintiff's lying to a superior officer, completing a false application, sleeping on the job, smoking marijuana, and undergoing a physical agility test at the Bridgeport Police Department while under disability leave at Norwalk Police Department.

11. After a conference with other employees of the Police Department, Chief Chiarenzelli recommended not offering the Special Police Officer position to the plaintiff because of the events revealed by the background investigation.

12. The only fact upon which the plaintiff bases his retaliation claim is a discussion he had with Chief Chiarenzelli about the plaintiff's prior Commission on Human Rights and Opportunities ("CHRO") filings.

13. The plaintiff is physically qualified to perform the functions and tasks of a Special Police Officer.

14. Dr. Polifroni stated that the plaintiff could perform the job duties of a Special Police Officer.

15. The plaintiff has been certified as a police officer by the Police Officers Standards and Training Council.

16. After the plaintiff was not recommended for the position of Special Police Officer, he continued to work for a time as a Traffic Agent.

17. The plaintiff voluntarily requested a leave of absence from the Town of Westport in 1998 and was granted that leave. The plaintiff has not returned to work as a Traffic Agent since then.

## DISCUSSION

Plaintiff contends that the defendants have known of the information they allegedly relied upon in rejecting his application for employment as a Special Police officer since the time he applied to be a traffic agent. It appears that the defendants were aware of the problems the plaintiff had when he was a police officer in Norwalk from the City of Norwalk personnel files. Other information clearly was not possessed earlier, such as the defendants' knowledge of plaintiff's discrimination complaints filed against other police departments. Defendants have annexed to their moving papers affidavits of the other employees of the police department consulted by the Chief as well as a score of pages of reports detailing the results of the investigation performed in 1998. No contention is made by plaintiff that these documents are not authentic. While plaintiff contests the accuracy of some of the reports, the issue is not whether they were correct but, rather, whether defendant relied on them in not recommending plaintiff for the position.

Plaintiff claims that, although he does not have a disability which would significantly restrict his ability to perform as a police officer, the defendants believe that he has such a disability. Plaintiff also claims that the defendants are retaliating against him because of the various claims he has previously filed against other police departments which refused to employ him. Neither of these claims is persuasive.

### 1. Disability

The Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213 (1995), defines disability as "a physical or mental impairment that substantially limits one or more of the major life activities" of an individual. 42 U.S.C. § 12102(2)(A). An individual is also considered disabled under the statute if he or she has a record of having such an impairment or is so regarded. 42 U.S.C. § 12102(2)(B), (C). Plaintiff takes the curious position that his back impairment would not prevent him from performing the strenuous functions of a police officer but does significantly impair his ability to recreate and socialize. He claims that recreation and socializing are major life activities. We will readily concede that a back ailment (one of the most common of human afflictions) can impair certain recreational activities (such as golf) and certain social activities (such as sexual intercourse) but not prohibit them. Recreation and socializing are not considered major life activities. See Colwell v. Suffolk County Police Dep't, 158 F.3d 635, 642–43 (2d Cir.1998), cert. denied, 526 U.S. 1018, 119 S.Ct. 1253, 143 L.Ed.2d 350 (1999). The implementing regulations define "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i) (2000); see also Sutton v. United Air Lines, Inc., 527 U.S. 471, 480, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999).

In addition, it does not appear that the defendants regarded plaintiff's back problem as being disabling. They had received medical documentation and State approval of plaintiff's physical qualifications. He was already performing satisfactorily as a traffic agent and would have continued as such had he not resigned. The evidence is overwhelming that the decision not to offer him the position as a Special Police officer was due to the adverse information obtained on the background check.[1] Reports

1. The plaintiff maintains that these claimed reasons could not be genuine since he was not advised of their significance until after he filed an administrative complaint with the

of lying to a superior officer, using illegal drugs, completing false applications, and undergoing a physical agility test for one city police department while on disability leave from another department do not commend a person for appointment to a job requiring high moral standards, such as a police officer. Therefore, we find that the plaintiff has failed to make out a *prima facie* claim under the ADA.

### 2. Retaliation

Plaintiff maintains that the defendants retaliated against him because he had filed charges of employment discrimination against other police departments.[2] The Police Chief acknowledged concern over these matters since it could impair his ability to discipline the plaintiff because of fear of being sued by him. That raises an interesting and apparently novel question of law. May a prospective employer consider the litigious nature of an employment applicant where some of his earlier complaints have involved claims of employment discrimination? It becomes particularly controversial where the applicant seeks to join an organization requiring fairly strict disciplinary obedience.

We decline to decide that issue in a vacuum. In this case, there were sufficient other grounds for not hiring the plaintiff that the possible impact of his earlier discrimination complaints can not be considered a legal cause of the adverse employment action.

### CONCLUSION

The plaintiff's motion for reconsideration [Doc. # 15] is **GRANTED**. After considering the merits of the Defendant's motion

for summary judgment [**Doc. # 11**], the Court adheres to its earlier granting of the motion.

The Clerk will enter judgment for the defendant.

SO ORDERED.

---

CHRO. By now, employers have learned that if they disclose adverse facts concerning prospective employees, they will be sued not only for employment discrimination but also for defamation.

2. Plaintiff lost some of these suits, including two against the Town of Weston, and settled others.